**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CLEO McGLORY,                 ) | |
|                             ) | |
|           Plaintiff,        ) | |
|                             ) | |
| vs.                          ) | Case No. CIV-09-143-M |
|                             ) | |
| INDEPENDENT SCHOOL DISTRICT   ) | |
| I-89 and TAMIE SANDERS, Principal,  ) | |
| in her individual capacity,      ) | |
|                             ) | |
|          Defendants.     ) | |

## <u>ORDER</u>

Before the Court is defendant Independent School District I-89 ("the District") with its Motion for Summary Judgment and Brief in Support [docket no. 23] and defendant Tamie Sanders ("Ms. Sanders") with her Motion for Summary Judgment and Brief in Support [docket no. 24], both filed on March 1, 2010. On March 29, 2010, plaintiff Cleo McGlory ("Mr. McGlory") filed his response to Ms. Sanders' motion for summary judgment and on March 30, 2010, Mr. McGlory filed his response to the District's motion for summary judgment. On April 8, 2010, the District and Ms. Sanders filed their respective replies to the responses to the motions for summary judgment. Based upon the parties' submissions, the Court makes its determination.

## I.    <u>INTRODUCTION</u>

For over twenty years, Mr. McGlory had been employed with Oklahoma City Public Schools where he served as Principal at various schools within the District. From September 2004 to January 2007, Mr. McGlory served as Principal of John Marshall High School. After an alleged failure to provide a safe and secure learning environment, Mr. McGlory was demoted to Assistant Principal

and reassigned to Northwest Classen High School.[1]  His contract of employment as Assistant Principal provided that he would be employed from August 1, 2007 to June 16, 2008.

Ms. Sanders served as Principal of Northwest Classen High School.  She assigned Mr. McGlory to act as Assistant Principal in charge of oversight and operation of the Ninth Grade Academy.[2]  Mr. McGlory was responsible for matters such as administering student discipline, monitoring instruction and implementing the District's policies.  On March 10, 2008, Ms. Sanders recommended to Saundra Park, the District's Acting Superintendent, the termination of Mr. McGlory's employment based upon his alleged failure to: (1) follow the discipline plans; (2) timely and progressively work discipline referrals; and (3) increase instruction time among students receiving discipline.  Ms. Park concurred and notified Mr. McGlory that she would recommend termination to the District.[3]

On May 2, 2008, the District notified Mr. McGlory of the recommendation for termination and advised him of the procedures to request a hearing.  On May 9, 2008, Mr. McGlory requested

---

[1]In January 2007, the District conducted a hearing on the recommendation to demote Mr. McGlory from Principal to Assistant Principal.  Having concluded that student discipline, safety and security issues were a major concern at John Marshall High School, Mr. McGlory was initially placed on an informal plan of improvement as related to these deficiencies and later placed on a formal plan of improvement.  In demoting him to Assistant Principal, the District determined that Mr. McGlory "failed to perform an essential function of the job of principal in that he has failed to provide sufficient leadership to establish and maintain a safe and orderly school climate for learning."  *See* Response, Exhibit 1, Minutes of the Special Meeting of January 9, 2007, at 7.

[2]The Ninth Grade Academy was formed to address the issues of high drop out rates, excessive discipline referrals and low school attendance rates.

[3] While the Court recognizes the difference between a "termination" and the "non-renewal" of an employment contract, the Court will use these terms interchangeably because of the parties use of both terms in their submissions, *e.g.*, Ms. Sanders submitted a "Recommendation for Termination" of Mr. McGlory's employment to the District, while the District characterizes their action as the non-renewal of Mr. McGlory's employment contract.

a hearing before the District.  On June 30, 2008, the District began the hearing on the recommendation for termination of Mr. McGlory's employment.  After hearing opening arguments and a number of witnesses, the District recessed and continued the hearing to a later date.  The hearing reconvened on July 10, 2008.  The District found that "Mr. McGlory failed to satisfactorily perform the required functions of his job assignment as Assistant Principal for the Academy" and concluded that his employment contract with the District should not be renewed.  *See* Response, Exhibit 24, Minutes of the Special Meeting of June 30, 2008, at 11.

As result of his dismissal, Mr. McGlory asserts the following claims: (1) discrimination based upon age; (2) discrimination based upon race; (3) violation of the Rehabilitation Act, 29 U.S.C. § 794; (4) breach of the collective bargaining agreement; (5) breach of contract; (6) violation of First Amendment rights; (7) violation of Due Process rights; (8) violation of public policy pursuant to *Burk v. K-Mart*, 770 P.2d 24 (1989); (9) tortious interference with contract; and (10) punitive damages.  The District and Ms. Sanders now move for summary judgment as to all of Mr. McGlory's claims.

## II.    SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party."  *19 Solid Waste Dep't Mechanics v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    DISCUSSION

    A.    Age Discrimination

Mr. McGlory alleges the District discriminated against him on account of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, *et seq.*, including incorporated provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* He bases this claim on his conclusion that Ms. Sanders and George Canning, Assistant Principal at Northwest Classen High School, were much younger than he was but were performing a far less superior job at handling discipline, yet were subject to termination.

Pursuant to the ADEA, it is unlawful for an employer to discriminate against "any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). The United States Supreme Court recently held:

> a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but for" cause of the challenged adverse employer action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in

4

that decision.

*Gross v. FBL Fin. Serv., Inc.*, --- U.S. ---, 129 S. Ct. 2343, 2352 (2009) (internal citation omitted).

A plaintiff may prove causation using either direct or circumstantial evidence of discrimination. *Id.*

at 2351.[4]

In the Tenth Circuit, when a plaintiff relies on circumstantial evidence to establish

discrimination, courts should use the *McDonnell Douglas* three-step analysis to determine whether

summary judgment is appropriate. *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1114 (10th

Cir. 2007). Under *McDonnell Douglas,* the plaintiff must come forward with enough evidence to

state a *prima facie* case of discrimination. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).

    1.      *Prima Facie* Case

In an age discrimination case like this one, the plaintiff must set forth four elements to

establish a *prima facie* case. Plaintiff must demonstrate that: (1) he was a member of a protected

class (*i.e.*, he was over 40 years old); (2) he was doing satisfactory work; (3) he was terminated; and

(4) his position was filled by a younger person. *See Rivera v. City & County of Denver*, 365 F.3d

912, 920 (10th Cir. 2004) (internal citation and quotation omitted).

In this case, the District contests the second element and contends Mr. McGlory was not

doing satisfactory work. Mr. McGlory responds that he was doing satisfactory work, as

demonstrated by increased rates of suspensions, discipline referrals and parent conferences, as well

as steady attendance rates and academic performance. Because Mr. McGlory has presented

---

[4]In *Gross*, the Supreme Court did not discuss the effect of its holding on the *McDonnell Douglas* burden-shifting analysis in an ADEA case, but observed in a footnote that it "has not definitely decided whether the evidentiary framework of *McDonnell Douglas* continues to be applicable in ADEA cases. For purposes of the instant case, the Court will assume that it is still appropriate to use the *McDonnell Douglas* burden-shifting analysis.

sufficient evidence as to the second element, the Court concludes that Mr. McGlory has established a *prima facie* case for age discrimination.

## 2. Legitimate, Non-Discriminatory Reason

The District asserts that it had a legitimate, non-discriminatory reason for Mr. McGlory's termination of employment - his poor job performance. If the plaintiff is successful in establishing a *prima facie* case, the defendant must then present a legitimate, non-discriminatory reason for the termination. *McDonnell Douglas*, 411 U.S. at 802. Assuming the defendant can articulate such a reason, to survive summary judgment, the plaintiff must then come forward with evidence establishing that the defendant's proffered reason was merely pretext for discrimination. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).

Here, the District articulates Mr. McGlory's poor job performance as a legitimate, non-discriminatory reason for his non-renewal of employment. The Court, therefore, concludes the District has articulated a legitimate, non-discriminatory reason for the non-renewal of Mr. McGlory's contract of employment.

## 3. Pretext

Mr. McGlory asserts that the District's proffered reason for non-renewal is pretextual for two reasons. First, Mr. McGlory contends that certain statistics raise an inference that the District's reasons are false. Second, Mr. McGlory contends that the District relied on the uncorroborated words of Ms. Sanders and otherwise failed to conduct a proper inquiry into the matter of his performance.

A plaintiff may show pretext by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant's legitimate, nondiscriminatory

reason. *Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997). Plaintiffs may present various types of evidence to establish pretext, *e.g.*, a defendant's failure to follow its own policies, use of subjective criteria in the termination decision, or disparate treatment of similarly situated employees. *See Riggs*, 497 F.3d at 1119; *see also McDonnell Douglas*, 411 U.S. at 804-05.

Courts, however, should not ask whether a defendant's decision to terminate a plaintiff was smart, fair or correct. Instead courts must limit their inquiry to whether the proffered reasons for the decision were honest and whether the defendant relied on them in good faith. *See Riggs*, 497 F.3d at 1118. Indeed, "[e]ven a mistaken belief can be a legitimate, non-pretextual reason for an employment decision." *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007). In short, courts should not rely on the benefit of hindsight to second-guess a defendant's employment decision if it appears that the defendant acted on an honestly held business judgment. *See Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (noting that courts should not act as "super personnel department[s]").

In this case, Mr. McGlory sets forth various statistics which imply that the District's legitimate, non-discriminatory reason is pretextual. Specifically, Mr. McGlory points to statistics which bear out he was processing more disciplinary actions than other assistant principals. Furthermore, he cites increases in the rates of suspensions, discipline referrals and parent conferences, as well as steady attendance rates and academic performance. It is unclear, however, whether Mr. McGlory asserts these statistics as evidence the District's reasons are false or alternatively, as proof that similarly situated employees were treated differently.

To the extent Mr. McGlory makes the veiled assertion that the District's conduct conformed to a general pattern of discrimination against a protected group, a plaintiff may use statistical

evidence of a disparity between himself and similarly situated workers to create an inference that a defendant discriminated against him. *See Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 746 (10th Cir. 1991). However, the statistical evidence must be drawn from a large enough pool to be reliable and it must "show a significant disparity and eliminate nondiscriminatory explanations for the disparity." *Id.; see also Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 986-87 (10th Cir. 1996) ("While statistical evidence may create an inference of discrimination, the evidence may be so flawed as to render it insufficient to raise a jury question."). Statistical evidence that merely lumps together employees regardless of individual characteristics that may explain any disparities will not suffice to show pretext. *See Furr*, 82 F.3d at 987 ("Statistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of pretext." (internal citation omitted)).

Here, Mr. McGlory has presented bits of statistical evidence on the volume of disciplinary referrals processed, parent conferences by administrator and suspensions in an attempt to show that the District had a school-wide mandate to terminate older workers. The District does not dispute the accuracy of the raw data.

The Court, however, finds that the statistical evidence is insufficient to create an inference of age discrimination. Specifically, Mr. McGlory relies on a very small set of data to support the inference of pretext. Mr. McGlory neither compares the statistics of similarly situated workers, nor does he attempt to adequately explain or eliminate potentially nondiscriminatory reasons for any disparities alleged to exist. Thus, Mr. McGlory's citation to statistics, even if it shows numerical disparities, does not raise a jury question regarding pretext because the statistical evidence is too flawed to support an inference of a general pattern of discrimination.

Next, Mr. McGlory challenges the factual basis for his termination as pretextual using the

above referenced statistics combined with other evidence. He asserts that he satisfactorily performed his duties and the District conducted an arbitrary and cursory investigation. Specifically, Mr. McGlory asserts that the District relied on the uncorroborated words of Ms. Sanders and otherwise failed to conduct a proper inquiry into the matter of his performance.

"It is error to assume...that differential treatment between [an employee in a protected class and a non-protected employee] that is not explained by the employer in terms of a rational, predetermined business policy *must* be based on illegal discrimination because of an employee's protected class characteristics." *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1319-20 (10th Cir. 1992) (emphasis in original). "An employer's articulated reason for terminating a member of a protected class need not be a sound business reason, or even a fair one.... The only relevant inquiry is whether the decision was based on [a protected status]." *Cf. Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). "Merely finding that people have been treated differently stops short of the crucial question: *why* people have been treated differently." *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d at 1320. "[P]laintiff must show not merely that the proffered reasons are pretextual but that they are 'a pretext *for discrimination.*'" *Id.* Therefore, "[i]t is not the duty of a court nor is it within the expertise of the courts to attempt to decide whether the business judgment of the employer was right or wrong. The court is not a super personnel department. All that a court does is to exercise a very limited review of the employment practices of an employer to see if the practices are shown to be lawful...." *Verniero v. Air Force Acad. School Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983).

In this case, the Court finds Mr. McGlory has failed to establish that the District terminated him is pretextual. Even if the statistics Mr. McGlory has presented - that he processed more discipline referrals, conducted more parent conferences and imposed more student suspensions than

other administrators - is factual evidence that the District wholly relied upon Ms. Sanders recommendation for termination without independently conducting its own thorough investigation, the Court finds that these statistics fail to address key aspects of Ms. Sanders' recommendation for termination such as the alleged failure to attend team meetings, failure to use progressive discipline and timely work discipline referrals.

Furthermore, the District concluded from its investigation that Mr. McGlory did not show a willful neglect of duty. The Court finds this is indicative that the District conducted its own independent investigation, rather than wholly rely on alleged uncorroborated words of Ms. Sanders or otherwise failed to conduct a proper inquiry into the matter. Even if the District conducted a biased or even a less than thorough investigation, the Court finds this does not constitute a violation of the ADEA unless the employment action is pretextual. Viewing the evidence in the light most favorable to Mr. McGlory, the Court finds that the reason given for not renewing Mr. McGlory's employment contract - unsatisfactory job performance - was not a pretext. Therefore, the Court finds that summary adjudication is proper.[5]

### B. Race Discrimination

Mr. McGlory asserts a claim against the District and Ms. Sanders for employment discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title

---

[5]In light of the Supreme Court's recent decision in *Gross*, the Court feels compelled to address another deficiency in Mr. McGlory's case that merits summary adjudication in favor of the District. While Mr. McGlory could arguably establish a *prima facie* case of age discrimination, and satisfy parts of the burden-shifting analysis, he has not presented one piece of evidence that would directly or inferentially link the District's non-renewal of his employment contract to a desire to discriminate by the decision-makers involved. Given the paucity of evidence tying his non-renewal to a discriminatory animus, the Court concludes that no reasonable jury could find that Mr. McGlory's non-renewal would not have occurred but for the District's desire to discriminate. Thus, even under *Gross*, summary judgment is appropriate.

VII"), 42 U.S.C. § 2000e, *et seq*., and Section 1981 of Title 42 of the United States Code. Specifically, Mr. McGlory contends that the District discriminated against him on the basis of race when he was terminated from his position of Assistant Principal at Northwest Classen High School. He further contends that Ms. Sanders discriminated against him on the basis of race by recommending his termination. Mr. McGlory was the sole African American administrator. He bases the race discrimination claim on his conclusion that he performed his duties in a satisfactory manner and Ms. Sanders would have known this had she conducted anything other than an arbitrary, cursory review of the facts. He also relies on the same statistics set forth in his age discrimination claim - that he worked more discipline referrals, held more discipline conferences and suspended more students than any other administrator at Northwest Classen High School. Also, Mr. McGlory appears to assert a race discrimination claim against the District on the basis of subordinate bias.

### 1.    *Prima Facie* Case

Whether the case is brought under Sections 1981 or 1983 or Title VII, the elements of a plaintiff's case are the same for proving discrimination based upon race. *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004). The Tenth Circuit has adopted the burden-shifting framework set out above in *McDonnell Douglas*. Under the *McDonnell Douglass* framework, a plaintiff must first make out a *prima facie* case of discrimination by establishing that: (1) he is a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination. *Id*. The Tenth Circuit has observed the following:

> As noted, we have stated that it "should not be obvious" that "the burden imposed on a plaintiff at the prima facie stage is 'not onerous.'" [*EEOC v. Horizon.CMS Healthcare Corp.*, 220 F.3d 1184 (10th Cir. 2001)] at 1197 (quoting *Texas Dept. of Community Affairs*

> *v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207
> (1981)). In *Horizon* we also noted that "[a] plaintiff alleging
> discrimination in violation of Title VII can satisfy the fourth element
> of her prima facie case in a number of ways." 220 F.3d at 1195 n. 6.
> One of those ways in a discriminatory discharge case is simply by
> showing that the job was not eliminated. *Id.* (citing *Perry v.
> Woodward*, 199 F.3d 1126, 1140 (10th Cir. 1999), *cert. denied*, 529
> U.S. 1110, 120 S.Ct. 1964, 146 L.Ed.2d 796 (2000)); *accord English
> v. Colorado Dept. of Corrections*, 248 F.3d 1002 (10th Cir. 2001).
> "The firing of a qualified minority employee raises the inference of
> discrimination because it is facially illogical for an employer to
> randomly fire an otherwise qualified employee and thereby incur the
> considerable expense and loss of productivity associated with hiring
> and training a replacement." *Perry v. Woodward*, 199 F.3d at 1140.

*Ortiz v. Norton*, 254 F.3d 889, 895 (10th Cir. 2001).

Further, "in order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate 'some affirmative link to causally connect the actor with the discriminatory action.'" *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000).[6]  The remaining elements of the burden-shifting framework are the same as the age discrimination claim, *e.g.*, legitimate, non-discriminatory reason and pretext.  *Id.* at 1175-76.

Here, because the burden imposed upon Mr. McGlory at the *prima facie* stage is not onerous, the Court finds that Mr. McGlory has presented sufficient evidence showing that: he is a member of a protected class; he was qualified and satisfactorily performing his job; and he was terminated under circumstances giving rise to the inference of discrimination.  Specifically, the Court finds that Mr. McGlory is African American, his position remained open and he was replaced by a employee not of his race.  Thus, the Court holds that Mr. McGlory has established a *prima facie* case for discrimination based upon race.

---

[6]For purposes of this motion, Ms. Sanders admits that she was connected to the adverse employment action because she recommended Mr. McGlory's termination.

## 2. Legitimate, Non-Discriminatory Reason

Having determined that Mr. McGlory has established a *prima facie* case for discrimination based upon race, the burden now shifts to the District and Ms. Sanders to articulate a legitimate, nondiscriminatory reason for the employment action. The Court finds that the District and Ms. Sanders have articulated that Mr. McGlory's inadequate job performance was the reason for his termination. The Court finds, therefore, that the District and Ms. Sanders have met this burden.

## 3. Pretext

The Court must now determine whether the reason offered by the District and Ms. Sanders is pretext for discrimination. In addition to the statistical evidence, Mr. McGlory contends that the evidence against him has very little evidentiary support except for the evidence proffered by Ms. Sanders' affidavit. Specifically, he asserts that Ms. Sanders cannot remember: when important events in this case occurred; which parent if any complained; student names; which students were out of class for long periods of time; or when she decided to press forward with her recommendation for Mr. McGlory's termination. It is further argued that Ms. Sanders' testimony lacks credibility because she did not write any notes or place memos into Mr. McGlory's employment file.

The Court finds the proffered evidence, *e.g.*, the credibility of Ms. Sanders' testimony, is insufficient in relation to the specific reasons and evidentiary support offered for Mr. McGlory's termination - the alleged failure to attend team meetings, failure to utilize progressive discipline and timely work discipline referrals. Specifically, the Court finds that the statistical evidence Mr. McGlory has presented - that he processed more discipline referrals, conducted more parent conference and imposed more student suspensions than other administrators - fails to properly

address critical aspects of the basis for the recommendation for non-renewal of employment such as the alleged failure to attend team meetings, failure to utilize progressive discipline and timely work discipline referrals. On this basis, the Court finds the reasons the District and Ms. Sanders gave for not renewing Mr. McGlory's employment contract were not a pretext. Therefore, the Court finds that summary adjudication is proper.

In his Petition, Mr. McGlory asserts another basis in which the District through Ms. Sanders discriminated against him on the basis of race by recommending his non-renewal of employment, namely that she harassed him and created a hostile work environment sufficiently severe or pervasive to interfere with his ability to perform his duties. Having reviewed Mr. McGlory's response, however, the Court finds that he has submitted no response to the arguments presented by defendants as to the allegations of hostile work environment such that the District and Ms. Sanders' allegations are deemed confessed pursuant to Local Civil Rule 7.1(g). The Court, therefore, finds that Mr. McGlory may not premise his claim for race discrimination upon a hostile work environment.

Furthermore, the Court finds that summary judgment on the race discrimination claim is proper on a separate basis. In relation to the District, Mr. McGlory appears to premise a theory of subordinate bias liability upon the actions of Ms. Sanders although the District is the decision-maker with respect to the hiring and termination of employees. Oklahoma School Code, Okla. Stat. tit. 70, §5-117(14). As the governing board and final policy-making authority for the school district, the District is required to independently investigate a plaintiff's claims. *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 485 (10th Cir. 2006). As the Tenth Circuit observed:

> Specifically, we have described a "rubber stamp" theory of liability, noting that "[t]o recover under this theory, the plaintiff must show

14

'that the decisionmaker followed the biased recommendation [of a subordinate] without independently investigating the complaint against the employee.'" Twice we have held that a plaintiff could not prevail because the decisionmaker had conducted an independent investigation of the facts, rather than relying entirely on the recommendation of the biased subordinate. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231-32 (10th Cir. 2000) (finding it "[i]mportant[ ]" that "in the course of his investigation" the decisionmaker asked the employee "to give his version of the exchange," but the employee declined to do so); *English*, 248 F.3d at 1011 (noting that the decisionmaker met twice with the employee and his attorney, and specifically asked for evidence rebutting or mitigating the findings of the allegedly biased subordinates).

*Id.* (internal citation omitted). To prevail on a subordinate bias claim, therefore, "the issue is whether the biased subordinate's discriminatory reports, recommendation, or other actions caused the adverse employment action." *Id.* at 487 (the Tenth Circuit concurring with the Seventh Circuit's approach to liability based upon subordinate bias). "Indeed, under our precedent, simply asking an employee for his version of events may defeat the inference that an employment decision was racially discriminatory." *Id.* (internal citation omitted).

In this case, the Court finds the evidence insufficient to premise a race discrimination claim against the District based upon liability for subordinate bias. Specifically, the Court finds that Mr. McGlory has not established a genuine issue of material fact concerning any bias of Ms. Sanders, *e.g.*, the subordinate, nor a causal relationship between Ms. Sanders' actions and the employment decision. Most importantly, the District conducted its own investigation of the events in a proper manner simply by asking Mr. McGlory for his version of events. As previously stated, the District specifically concluded that Mr. McGlory did not wilfully neglect his duties. This is not reflective of a "rubber stamp" of Ms. Sanders' recommendations.

Accordingly, the Court grants summary judgment as to Mr. McGlory's race discrimination

claims against the District and Ms. Sanders.

C.    Rehabilitation Act

Mr. McGlory alleges that the District's non-renewal of his employment is in retaliation for

engaging in protected activity under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  While

the Rehabilitation Act does not explicitly mention retaliation, it provides as follows:

> No otherwise qualified individual with a disability in the United
> States, as defined in section 705(20) of this title, shall, solely by
> reason of her or his disability, be excluded from the participation in,
> be denied the benefits of, or be subjected to discrimination under any
> program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a).  However, Section 794(d) provides:

> The standards used to determine whether this section has been
> violated in a complaint alleging employment discrimination under
> this section shall be the standards applied under title I of the
> Americans with Disability Act of 1990 (42 U.S.C. 12111 et seq.) and
> the provisions of sections 501 through 504, and 510 of the Americans
> with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210),
> as such sections relate to employment.

29 U.S.C. § 794(d).  One of the cross-referenced sections from the Americans with Disability Act

("ADA"), 42 U.S.C. § 12203, observes:

> (a)    Retaliation
> No person shall discriminate against any individual because such
> individual has opposed any act or practice made unlawful by this
> chapter or because such individual made a charge, testified, assisted,
> or participated in any manner in an investigation, proceeding, or
> hearing under this chapter.

42 U.S.C. § 12203(a).

To establish a *prima facie* case for retaliation under the ADA, a plaintiff must show: (1)

protected employee action; (2) adverse action by an employer either after or contemporaneous with

the employee's protected action; and (3) a causal connection between the employee's action and the

employer's adverse action. *Jarvis v. Potter*, 500 F.3d 1113, 1125 (10th Cir. 2007). "Once the plaintiff establishes a prima facie case, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies, and the employer must produce evidence of a legitimate, nonretaliatory reason for the adverse action, *see Doebele*, 342 F.3d at 1135. If the employer does so, the burden then shifts back to the employee to show that the proffered reason is pretextual. *See id.*" *Id.*

Turning to the specific claims in this case, Mr. McGlory asserts that he first complained to Ms. Sanders in February 2008 regarding the discipline of special education students in February 2008. He argues that Ms. Sanders then prepared her recommendation of termination, dated March 10, 2008. Thereafter, on June 24, 2008, Mr. McGlory filed complaints on behalf of thirty (30) special education students with the Oklahoma State Department of Education. Allegedly, the complaints were forwarded to Sandra Park, the Acting Superintendent who recommended Mr. McGlory's non-renewal of employment at the June 30, 2008 hearing. After the hearing reconvened on July 10, 2008, Mr. McGlory's contract of employment was not renewed. Mr. McGlory avers that these facts are sufficient to establish a causal connection between his advocacy for a disabled student and an inference of retaliatory motive because his protected conduct was closed followed by adverse action.

In response, the District asserts, *inter alia*, that Ms. Sanders had concerns about Mr. McGlory's employment as early as October 2007 and had already prepared a recommendation for termination and reviewed it with the District's human resources officer in December 2007. Because the District's investigation of Mr. McGlory's job performance predates his complaint to Ms. Sanders, the District contends there is no causal connection between Mr. McGlory's protected action

and the adverse event.

Having reviewed the parties' submissions, the Court finds there is a genuine issue of material fact concerning whether the District violated Section 504 of the Rehabilitation Act. Whereas the District, through Ms. Sanders, claims to have prepared a draft recommendation of termination and met with the human resources officer in December 2007, the matter is in dispute whether the District had actually decided on Mr. McGlory's termination of employment at that moment in time. *See* Deposition of Tamie Sanders, Response, Exhibit 6, at p. 50-52 (observing that in December 2007, Ms. Sanders did not issue her recommendation to Mr. McGlory because she was waiting to see if his performance would improve.) Viewing all reasonable inferences in Mr. McGlory's favor, this evidence would seem to indicate that Ms. Sanders had not decided to recommend the termination of Mr. McGlory in December 2007. Because Mr. McGlory allegedly complained to Ms. Sanders in February 2008 and later in March 2008, Ms. Sanders had decided to recommend Mr. McGlory's termination, the Court finds this evidence, and the evidence related to the filing of the thirty (30) complaints, sufficient to withstand summary adjudication.

Accordingly, the Court denies summary judgment as to Mr. McGlory's Rehabilitation Act claim.

## D. Collective Bargaining Agreement

Mr. McGlory alleges that the District violated the Collective Bargaining Agreement ("CBA") between the District and the American Federation of School Administrators when it failed to promptly notify and call to his attention any complaints made against him by his superiors or any teachers, parent, student and/or member of the public. He also asserts that derogatory reports and/or letters were placed in his personnel file without him having an opportunity to respond in violation

of the CBA and that an investigation was being conducted without him having the right to defend himself. Further, he contends that the CBA was violated because the District failed to admonish him and provide him an opportunity to improve his performance.

Under Oklahoma law, the "board of education of each school district shall have power to ... [m]ake rules ... governing the board and the school system of the district ... [and] contract with and fix the duties and compensation of ... superintendents, principals ... and other necessary employees of the district...." Okla. Stat. tit. 70, § 5-117. Therefore, the Court finds the District has the final policy-making authority and final decision-making authority as to the hiring and firing of all employees including assistant principals. *See* Okla. Stat. tit. 70, § 5-117(14) and § 6-101.13. As the Oklahoma Supreme Court has observed:

> Section 5-117(A)15 explicitly confers upon school boards the function of fixing teacher duties. We hence find a school board has the plenary power to discontinue the extra-duty assignments of a tenured teacher. Such power is essentially managerial in nature and not bargainable... To find otherwise would *significantly* interfere with the board's inherent managerial responsibility for the local educational policies and duty to maintain adequate standards for the benefit of the pupils and the school district.

*Mindemann v. Indep. School Dist. No. 6 of Caddo County*, 771 P.2d 996, 1002 (10th Cir. 1989) (emphasis in original).

In this Court's view, this legal principle extends to this case. To the extent the CBA attempts to void or supersede the District's non-renewal of Mr. McGlory's employment contract, the Court finds that such agreement is subject to statutory boundaries and such authority may not be limited by either compliance or non-compliance with provisions of the CBA. By statute, the District has the prerogative to hire and fire assistant principals regardless of specific procedures imposed by the CBA because "such power is essentially managerial in nature and not bargainable." *Id.*

Accordingly, the Court grants the motion for summary judgment as related to the CBA.

E.      Breach of Contract

Mr. McGlory next alleges that the District breached his employment contract which provided that it would be renewed unless the District determined just cause existed to terminate the contract. The District contends that the plain unambiguous language of Mr. McGlory's employment contract for the 2007-2008 school year provides that the contract terminates on June 16, 2008, and that the contract will automatically be extended until the employee is either re-assigned or notified the assignment has been terminated.   In his response, Mr. McGlory, however, does not dispute arguments set forth in the District's brief.  Pursuant to Local Civil Rule 7.1(g), the Court deems this matter confessed.

Accordingly, the Court grants the motion for summary judgment as to the breach of contract claim.

F.      First Amendment

Mr. McGlory alleges that the District retaliated against him in violation of his constitutional right to free speech.  He asserts that his concerns regarding discipline administered to special education students were voiced to his supervisor, Ms. Sanders, and others.  Mr. McGlory contends he spoke about these concerns to Mary Barrett, a special education teacher, George Canning, an assistant principal, and Kristen Johnson, a special education supervisor.  Furthermore, Mr. McGlory submitted complaints on behalf of thirty (30) students to Gail Priddy of the Oklahoma State Board of Education as well as a complaint to the same entity regarding academic and financial fraud.  Mr. McGlory avers that this speech motivated Ms. Sanders' recommendation for termination and the District's non-renewal of his employment contract.

The test for determining whether Mr. McGlory was denied his constitutional rights by being terminated for speaking on matters of public concern is the *Garcetti/Pickering* test. This test invokes the following five elements:

1.      Whether the speech was made pursuant to an employee's official duties;

2.      Whether the speech was on a matter of public concern;

3.      Whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests;

4.      Whether the protected speech was a motivating factor in the adverse employment action; and

5.      Whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009). "The first three 'prongs' are said to be issues of law to be decided by the court; the last two are factual issues to be decided by the factfinder." *Id.*

### 1.      Official Duties

In *Garcetti*, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Consequently, "employee speech that is made pursuant to the employee's professional duties is not accorded First Amendment protection under *Garcetti*." *Thomas v. City of Blanchard*, 548 F.3d 1317, 1323 (10th Cir. 2008). However, the mere fact that an employee's speech was made at work or about work does not remove it from the ambit of First Amendment protection. *Id.* "Rather, it is whether the speech was made pursuant to the employee's job duties or, in other words, whether the speech was commissioned by the employer." *Id.* (internal

quotations omitted).

The inquiry of where to draw the line between "official" and "unofficial" duties is a practical one. *See id.*, at 1323-24. According to the Tenth Circuit, when an employee goes beyond his chain of command about a matter which is not committed to his care, his speech is protected by the First Amendment. *See id.* at 1325 ("Threatening to report fraudulent [conduct] to *law enforcement officials* was not the 'type' of activity [the employee] was paid to do.").

Having reviewed the parties' submissions, the Court concludes that Mr. McGlory's act of filing complaints on behalf of thirty (30) students as well as the complaint of academic and financial fraud to the Oklahoma State Department of Education was not part of his official duty. Therefore, constitutional protection is warranted as to this speech. Even if it stemmed from the type of activity he was paid to do, the Court finds that this conduct deserves protection because Mr. McGlory effectively "went beyond [his] supervisors and reported to someone outside [his] chain of command about a matter which was not committed to [his] care...." *Id.*

This determination does not extend to Mr. McGlory's complaints about the discipline of special education students to supervisors and administrators up the chain of command. Because some specific statements were made up the chain of command, the Court finds that statements made to supervisors and administrators necessitate a finding they were made pursuant to his official duties. These particular statements, therefore, are not entitled to First Amendment protection. Notwithstanding this limitation, the alleged protected speech must also withstand the scrutiny of the remaining prongs of the *Garcetti/Pickering* test.

### 2. Matter of Public Concern

Having concluded that Mr. McGlory's speech was not made, in part, pursuant to his official

duties, the Court must consider whether Mr. McGlory's speech was made on a matter of public concern. "To determine whether speech is of public concern, a court must examine the 'content, form and context of a given statement, as revealed by the whole record.' The court should also consider whether the speech is directed at a public issue or is merely an attempt to redress personal grievances. To be protected, speech must fairly relate to a 'matter of political, social or other concern to the community.'" *Paradis v. Montrose Mem'l Hosp.*, 157 F.3d 815, 818 (10th Cir. 1998). (internal citations omitted). The established precedence "makes clear that public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 83-4 (2004).

In this case, the Court finds the evidence is sufficient to support the conclusion that Mr. McGlory's speech on the wrongful treatment of special education students and his allegations of academic and financial misconduct touch upon matters of public concern. Even if Mr. McGlory lodged these complaints in order redress his personal grievances with school administrators, the Court finds, nonetheless, that these topics are the subject of legitimate news interest and a 'matter of political, social or other concern to the community.' Therefore, the Court finds that Mr. McGlory has satisfied the second prong of the *Garcetti/Pickering* test.

### 3. Balancing of Interests

Having concluded that Mr. McGlory has satisfied both the first and second prongs of the *Garcetti/Pickering* test, the Court must now determine whether the District's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh Mr. McGlory's free speech interests. "Although this element is framed as a balancing test, this court has held that First

Amendment rights are protected unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee." *Dixon*, 553 F.3d at 1304 (internal quotations omitted). "In other words, unless the government employer can show that the termination was based on legitimate reasons grounded in the efficient conduct of public business, there is no need to proceed to balancing, and the First Amendment interest of the plaintiff prevails." *Id.*

Applying this principle to this case, the Court finds that the District has not proffered a legitimate reason grounded in the efficient conduct of public business. Because no balancing of interests is necessary, the Court finds that the third prong of the *Garcetti/Pickering* test is satisfied.

### 4. Motivating Factor

Even if an employee can show that the first three prongs of the *Garcetti/Pickering* analysis are met, he must still satisfy the fourth prong, which requires him to show that his speech was a motivating factor in the adverse employment decision. To sustain a First Amendment claim, a plaintiff must establish that the defendant was aware of his protected speech at the time they made the adverse employment decision. *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 750 (10th Cir. 2010).

Here, the District asserts that Mr. McGlory's filing of formal complaints to the Oklahoma State Department of Education cannot form the basis for his First Amendment claim because these complaints were not made until after the recommendation for termination had been made. Viewing the evidence in the light most favorable to Mr. McGlory, the Court concludes there is sufficient evidence to demonstrate that his protected speech may have motivated the adverse employment decision. Specifically, Mr. McGlory alleges he made his complaint to the Oklahoma State

Department of Education on June 27, 2008, three days before the District's June 30, 2008 hearing on the recommendation for his termination. Although a weekend falls in between the filing date and the hearing date, the District did not make its final determination on the recommendation for termination at its June 30, 2008 hearing. Instead, it reconvened the hearing on July 10, 2008 and made its final determination at this time. Because the finder of fact could reasonably infer that the District learned about and may have been motivated by this protected speech, the Court finds there is sufficient evidence to create a genuine issue of material fact as to whether these communications were a motivating factor in the District's adverse employment decision.

The District does not contest whether Mr. McGlory can satisfy the fifth prong of the *Garcetti/Pickering* test. As tightly circumscribed to complaints made to the Oklahoma State Department of Education, the Court grants in part and denies in part the District's motion for summary judgment as to protected speech.

### 5. Qualified Immunity

Ms. Sanders is being sued in her individual capacity and asserts she is entitled to qualified immunity. The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808, 815 (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether qualified immunity applies, the Court must determine whether the facts shown by a plaintiff demonstrate a constitutional violation and whether the right at issue was clearly established at the time of a defendant's conduct. *Id.* at 815-16. District courts are free to consider these factors in the order most appropriate for resolution of the specific case at issue. *Id.* at 818 (overturning the mandate set

forth in *Saucier v. Katz*, 533 U.S. 194 (2001)).

In this case, the Court finds that the law regarding First Amendment retaliation in the public employment context is not clearly defined because the contours of protected speech is the subject of evolving case law. *See City of San Diego v. Roe*, 543 U.S. 77, 83-4 (2004) (observing "the boundaries of the public concern test are not well defined..." and a balancing test is applied to each individual case). As there is no dispute that Ms. Sanders is a government official, the Court concludes she is entitled to qualified immunity insofar as her conduct does not violate a clearly established statutory or constitutional right. The Court, therefore, grants summary judgment as to the First Amendment retaliation claim asserted against Ms. Sanders in her individual capacity.

Accordingly, the Court grants in part and denies in part the District's motion for summary judgment as tightly circumscribed to complaints made to the Oklahoma State Board of Education and grants Ms. Sanders' motion for summary judgment as to the First Amendment retaliation claim asserted against Ms. Sanders in her individual capacity.

G.    Due Process

Mr. McGlory asserts that his due process rights were violated. In October and November 2007, Mr. McGlory alleges that Ms. Sanders solicited emails from teachers within the Ninth Grade Academy regarding his job performance. Purportedly, some of these responses were derogatory and complained of Mr. McGlory's professional conduct although Mr. McGlory was not notified of the emails until they were furnished as exhibits in connection to the June 30, 2008 hearing. Mr. McGlory further asserts he did not receive Ms. Sanders' March 10, 2008 recommendation for termination until May 2008 even though the document reflects a copy was placed in his personnel file. Mr. McGlory also contends he was deprived of a meaningful opportunity to investigate and

respond to claims which were the subject of the hearing.

Moreover, Mr. McGlory observes that the June 30, 2008 hearing was recessed at 10:15 p.m. and reconvened on July 10, 2008. Some of Mr. McGlory's witnesses who attended the first hearing but did not testify failed to appear at the second hearing, thus allegedly depriving Mr. McGlory of an opportunity to fully present his side of the story.

### 1.    Procedural Due Process

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for [a] hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). "Procedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision." *Kirkland v. St. Vrain Valley School Dist. No. Re-1J*, 464 F.3d 1182, 1189 (10th Cir. 2006). "We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Cleveland Bd. of Educ.*, 470 U.S. at 542.

"To determine whether a plaintiff was denied procedural due process, we engage in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? [and] (2) Was the individual afforded an appropriate level of process?" *Kirkland*, 464 F.3d at 1189. While the formality and procedural requisites for the hearing varies depending on the importance of interest involved and nature of proceedings, some essential requirements are notice of the charges, a summary of the employer's evidence and an opportunity to respond. *Kirkland*, 464 F.3d at 1189; *Montgomery v. City of Ardmore*, 365 F.3d 926, 936 (10th Cir. 2004). Furthermore, an administrative tribunal cannot run afoul of the Due Process Clause for its failure to compel the

attendance of witnesses when it lacks subpoena power. *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 521 (10th Cir. 1998).

In this case, the District and Ms. Sanders concede that Mr. McGlory had a property interest in continued employment and entitled to procedural due process. However, the question remains whether Mr. McGlory was afforded an appropriate level of process?

Having reviewed the parties' submissions, the Court finds that Mr. McGlory was afforded sufficient procedural due process prior to the termination of his employment. Specifically, he was given notice of the pre-termination hearing where he was represented by counsel. At the pre-hearing conference, the parties exchanged evidence and exhibits in connection with the District's and Ms. Sander's allegations against Mr. McGlory. At the hearing, Mr. McGlory had the opportunity to present evidence and the opportunity to cross-examine witnesses. The Court finds that Mr. McGlory was provided an appropriate level of procedural due process.

As related to Mr. McGlory's assertion of the untimely notice of evidence, the Court finds there is no time requirement by which evidence must be submitted to the opposing party. Even if the notice of evidence was insufficient under the collective bargaining agreement, the Court finds this alleged omission does not establish a violation of constitutional due process requirements. All that procedural due process requires in this context is the exchange of evidence in a manner which affords the party charged an opportunity to respond.

The District, as an administrative tribunal, lacks the subpoena power to compel witnesses to attend scheduled hearings. Consequently, the Court finds the failure to compel witnesses to attend the successive hearing did not violate Mr. McGlory's procedural due process rights.

As Mr. McGlory has not presented sufficient evidence for the reasonable juror to find that

his procedural due process rights were violated, the Court concludes that summary adjudication is proper as to this basis.

### 2. Substantive Due Process and Liberty Interest

To the extent Mr. McGlory asserts a substantive due process claim and a separate claim for the violation of his liberty interest, he has not responded to the arguments set forth in the District's and Ms. Sanders' motions. Pursuant to Local Civil Rule 7.1(g), the Court deems those claims confessed such that summary adjudication is proper.

Accordingly, the Court grants the motions for summary judgment as related to due process.

### H. *Burk* Claim

Mr. McGlory alleges violations of Oklahoma public policy as set forth in *Burk v. K-Mart*, 770 P.2d 24 (1989). The Oklahoma Supreme Court has adopted a public policy exception in a narrow class of cases in which an employer's discharge of an at-will employee is contrary to the mandates of public policy. *Id*. A *Burk* tort is an exception to Oklahoma's doctrine of at-will employment. *Id*.

In this case, the Court finds that Mr. McGlory fails to demonstrate that he is an at-will employee entitled to protections pursuant to *Burk*. Rather, Mr. McGlory had a contract of employment with the District which had a defined and specific period of employment and which could only be terminated when reasons were established for termination and after procedural due process. As such, the Court finds that Mr. McGlory is not an at-will employee entitled to the protections of the public policy set forth in *Burk*.

Accordingly, the Court grants the motions for summary judgment as to the *Burk* claim.

### I. Tortious Interference with Contract

Mr. McGlory asserts a claim for tortious interference with contract against both the District and Ms. Sanders. To recover in an action for interference with contract of business relations, a plaintiff must show that: (1) he or she had a business or contractual right that was interfered with; (2) the interference was malicious and wrongful and that such interference was neither justified, privileged nor excusable; and (3) damage was proximately caused by the interference. *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1093 (10th Cir. 2006). "The interference with contract tort is not designed to protect against an employee acting in good faith but using poor business judgment. Acting in good faith and using poor business judgment are not mutually exclusive." *Martin v. Johnson*, 975 P.2d 889, 897 (Okla. 1998). In order for an employee's actions to be in tortious bad faith, such actions must be committed outside the scope of employment.

Having reviewed the parties' submissions, the Court finds the acts alleged as tortious interference against Ms. Sanders were acts committed within the scope of her employment in an educational setting. Specifically, the Court finds Ms. Sanders acts were part and parcel of her role as a principal. There being no reasonable conclusion to be drawn from the circumstances of Ms. Sanders' acts in the scope of employment with respect to Mr. McGlory, the Court finds that summary adjudication is proper.

Although Mr. McGlory responds to this claim in both his response to the District's motion for summary judgment and Ms. Sanders' motion for summary judgment, it appears that this claim is alleged only against Ms. Sanders. However, to the extent that Mr. McGlory asserts such a cause of action against the District, the Oklahoma Supreme Court provides that a political subdivision is immune from a claim of tortious interference with a business relationship committed by its employees. *See Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1163 (Okla. 2009).

Accordingly, the Court grants the motions for summary judgment as to the tortious interference with contract claim.

J.      Punitive Damages

As set forth above, the Court concludes there are no basis for the claims against Ms. Sanders in her individual capacity.  Therefore, summary adjudication is proper on this basis.  To the extent that Mr. McGlory seeks to recover punitive damages against the District, the Governmental Tort Claims Act provides that "[n]o award for damages in an action or any claim against the state or a political subdivision shall include punitive or exemplary damages."  Okla. Stat. tit. 51, § 154(C).

Accordingly, the Court grants the motions for summary judgment as to punitive damages.

IV.     CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART the

motions for summary judgment as follows:

(A)     The Court GRANTS Ms. Sanders' motion for summary judgment with respect to all
        claims and the District's motion for summary judgment as to Mr. McGlory's age
        discrimination, race discrimination, Collective Bargaining Agreement, breach of
        contract, Due Process, *Burk*, tortious interference with contract and punitive damages
        claims;

(B)     The Court GRANTS IN PART and DENIES IN PART the District's motion for
        summary judgment in reference to Mr. McGlory's First Amendment claim as tightly
        circumscribed to complaints made to the Oklahoma State Department of Education;
        and

(C)     The Court DENIES the District's motion for summary judgment as to Mr.
        McGlory's  Rehabilitation Act claim.

        **IT IS SO ORDERED this 29th day of April, 2010.**


VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE